IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EVA MATTHEWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:04-CV-640-WKW |
| | ) | (WO) |
| CITY OF DOTHAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eva Matthews ("Matthews") brings this action for age and race discrimination and retaliation.  Matthews alleges discrimination based on race and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq*., and  42 U.S.C. § 1981, and discrimination based on age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Alabama Age Discrimination in Employment Act ("AADEA"), Ala. Code. § 25-1-22 *et seq*.§ 1981, against the City of Dothan, Alabama ("City").  Matthews alleges discrimination based on race and retaliation in violation of Title VII, 42 U.S.C. § 1981, and the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against the individual City defendants, City Manager Dennis Rubin ("Rubin"), City Mayor Chester Sowell, City Commissioners Pat Thomas, Jason Rudd, Don Clements, and Matt Bullard. Matthews alleges race discrimination and retaliation in violation of Title VII, 42 U.S.C. § 1981, and the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against Mike Tew ("Tew"), Chair of the Citizens Supervisory Commission ("CSC").

This case is presently before the court on the defendants' Motion for Summary Judgment (Doc. # 60) and Motion to Strike Declarations (Doc. # 77).  For reasons to be discussed, the court

finds that the motion for summary judgment is due to be granted.[1]  The motion to strike is due to be

denied as moot.

## I. FACTS AND PROCEDURAL HISTORY

The facts contained in the parties' evidentiary submissions, viewed in a light most favorable

to the non-movant, show the following:  The City is governed by the Mayor, a City Commission, and

a City Manager.  The City Manager handles day-to-day operation of the City, under the direction of

the Mayor and City Commission.  The City's Personnel Department supervises all classified

employees and is overseen by the Personnel Board.  The Personnel Board is comprised of volunteers[2]

who are appointed by the City's Citizens Supervisory Committee ("CSC"), which is comprised of

representatives from various civic organizations.   The Personnel Board is responsible for adopting

rules and regulations having to do with classified employees and for conducting grievance hearings

based on complaints by classified employees.

Plaintiff Matthews was on the Personnel Board from 2000 to 2005 and served as the chair

for approximately three years at the end of her tenure.  At all times relevant, Tew was the chair of

the CSC.  On December 9, 2002, Matthews presided over a grievance hearing brought by an

employee of the City who claimed she had been the victim of racial discrimination.  Matthews

asserts that, as chair of the Personnel Board, she allowed the hearing to proceed over the objection

---

[1]  By Order dated August 30, 2006 (Doc. # 96), the court granted Defendant Mike Tew's Motion for Summary Judgment (Doc. # 58) without opinion.  As stated in the Order, this memorandum opinion includes the court's reasoning for granting Defendant Mike Tew's motion for summary judgment.

[2]  Defendants characterize persons on the Personnel Board as "volunteers."  Matthews asserts that pursuant to the City's Civil Service Act, a person chosen to sit on the Personnel Board is considered an unclassified employee of the City.  As a former member of the Personnel Board, she argues that she has been "given an identification number, paid monetary compensation [$50] and received medical insurance benefits."  (Pl. Br. 3.)  The City counters that volunteers receive a $50 stipend for each board meeting.  The court finds that it is a distinction without a difference in that the determination of whether Matthews is a volunteer or an employee has no bearing on the court's analysis or its holding.

of white City officials.  When Matthews's term as chair of the Personnel Board expired on May 1, 2005, she was not appointed to serve another term.

In November 2002, Matthews, a 49-year-old black female, applied for the position of City Clerk-Treasurer, which the job posting described as follows:

> This is responsible administrative and supervisory work in the recording, preparation, verification and maintenance of City records and legal documents, overseeing Board of Commission proceedings, conducting elections, and supervision of the City Clerk Department's staff.  The work involves a wide range of administrative and supervisory duties and is subject only to broad administrative review for conformance with City regulations and policies.

(Pl. Ex. 2B.)  The job description identified three qualifications: a bachelor's degree in public or business administration with an accounting minor, extensive experience in the field of municipal administration, and certified municipal clerk status or ability to obtain such certification.  Nevertheless, applicants with comparable education and experience were encouraged to apply.  The job description also included a non-comprehensive and potentially over-inclusive list of more than two dozen "examples of work performed," as well as another dozen or so "required knowledge, skills and abilities."  (*Id*.)

In addition to serving as chair of the Personnel Board, Matthews was a Supervisory Attorney-Advisor with the Office of the Staff Judge Advocate at Fort Rucker, Alabama, when she applied for the position.  Matthews has a bachelor's degree in political science and sociology with a concentration in social work practice.  She also has a law degree, is licensed to practice law in Michigan and various federal courts, and has over twenty-three years of legal and administrative

experience, including experience in claims and recovery.[3]  On December 10, 2002, Matthews was selected as one of five finalists to be interviewed.  Another finalist was Pam McCoy ("McCoy"), a 43-year-old white female.  McCoy had fourteen years of service with the City as Accountant, Chief Accountant, and, at the time of her interview, Assistant Finance Director.  She had a bachelor's degree in accounting, was a Certified Government Financial Manager, and had many years of experience in municipal government.

City Manager Dennis Rubin ("Rubin")[4] and Reverend L. C. Green ("Reverend Green")[5], who conducted all of the interviews, interviewed Matthews on December 30, 2002.  Rubin and Reverend Green took turns asking the same set of questions to each interviewee.   On January 7, 2003, the City Commission and Mayor approved Rubin's recommendation to award the position to McCoy.

In April 2003, Matthews filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  In April 2004, the EEOC issued a cause determination and notified Matthews of her right to sue.  Matthews filed this suit on June 29, 2004, alleging claims of race discrimination, age discrimination, and retaliation against the defendants.

---

[3]  Matthews asserts that "[t]he City Defendants were presented with documentary proof [of] Matthews'[s] qualifications, education, and exceptional performance of duty as a public administrator and attorney before interviews were scheduled for the City Clerk-Treasurer position."  (Pl. Br. 8.)  The court acknowledges that Matthews's application included such information but cannot, without evidentiary support,  credit Matthews's claim that each City defendant had actual knowledge of her application prior to interviews.

[4]  The position of City Clerk-Treasurer is unclassified; thus, the City Manager (rather than the Personnel Department) is responsible for employment decisions related to the position.

[5]  Reverend Green, the Chaplain of the Dothan Fire Department, is not an employee of the City.  Rubin asserts that he invited Reverend Green to join in the interview process to ensure a balanced perspective.  (Rubin Dep. 71.)

## II.  JURISDICTION AND VENUE

Because this case arises under Title VII, the ADEA, and  42 U.S.C. § 1981 and § 1983,  and 29 U.S.C. § 621 *et seq.*, the Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  As to the claims arising under the AADEA, this Court exercises supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Additionally, the Court finds that the record includes adequate allegations supporting personal jurisdiction and venue.

## III.  SUMMARY JUDGMENT STANDARD

Under Rule 56 (c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.   The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.   *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324.   To avoid summary judgment, the nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   On the other hand, the court must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c).

## IV. DISCUSSION

### A.   *Identification of Claims*

#### 1. Failure to Hire and Retaliation Based on Race Under Title VII

Matthews brings claims under Title VII.  Title VII prohibits "an employer to fail or refuse to hire . . . any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).[6] In addition to its prohibition on discrimination in hiring, Title VII also makes retaliation illegal:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Relief granted under Title VII is against the employer, not individual employees whose actions would constitute a Title VII violation. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).  Therefore, Matthews cannot maintain a Title VII claim against the individual defendants.  Accordingly, all Title VII claims against any defendant other than the City

---

[6]  The City argues that the position of City Clerk-Treasurer is not an "employee" as defined by Title VII. The court assumes without deciding that Title VII is applicable here.

are due to be dismissed.  *See Cross v. State of Ala. Dept. of Mental Health and Mental Retardation,* 49 F.3d 1490, 1504 (11th Cir. 1995).

   2.  Discrimination Based on Race Under Section 1981 and Section 1983

   Matthews also brings race discrimination claims pursuant to 42 U.S.C. § 1981 and § 1983. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws and proceedings for the security of persons and property . . . ."  42 U.S.C. § 1981 (a).  Section 1983 prohibits "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting under color of state law. 42 U.S.C. § 1983.  Where the defendants are actors under color of state law, claims under § 1981 and § 1983 merge.  *Moore v. Alabama*, 989 F. Supp. 1412 (M.D. Ala. 1997).  "The Supreme Court has ruled that 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" *Pearson v. Macon-Bibb County Hosp. Auth.*, 952 F.2d 1274, 1278 n.3 (11th Cir. 1992) (quoting *Jett v. Dallas Ind. School Dist.*, 491 U.S. 701, 733 (1989)).  Because § 1981 provides no broader remedy than § 1983, *see Busby v. City of Orlando*, 931 F.2d 764, 771-72 n.6 (11th Cir. 1991), the claims are merged and treated as a § 1983 claim.

   This § 1983 claim alleges a violation of Matthews's equal protection right to be free from intentional racial discrimination pursuant to the Fourteenth Amendment.  *See Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991).[7]  "In order to establish a violation of the Equal

---

   [7]  "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis,* 426 U.S. 229, 239 (1976). The Equal Protection clause protects individuals from treatment based upon "improper motives" such as race. *Bass v. City of Albany,* 968 F.2d 1067, 1069 (11th Cir. 1992); *see also Busby,* 931 F.2d at 774 (holding that the equal protection clause provides the plaintiff "a right to be free from racial discrimination") (citation omitted); *Williams v. Consol.*

Protection Clause, appellees must prove discriminatory motive or purpose." *Cross*, 49 F.3d at 1507-1508.

### 3.   Discrimination Based on Age under the ADEA and the AADEA

Matthews's lawsuit further includes claims of age discrimination under federal and state law. The ADEA provides that it is illegal for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623 (a)(1). The AADEA provides that it is "an unlawful employment practice for an employer to . . . [f]ail or refuse to hire . . . an individual . . . because of the age of the individual." Ala. Code § 25-1-22 (1975).

## B.   *Analytical Framework*

To prevail on her claims against the defendants,[8] Matthews must prove an intentional discriminatory motive by presenting direct or circumstantial evidence of illegal animus. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Because Matthews presents circumstantial, rather than direct, evidence of discrimination, Matthews's claims are analyzed under the burden-shifting analysis found in

---

*City of Jacksonville*, 341 F.3d 1261, 1268 (11th Cir. 2003) (recognizing an equal protection right to be free from employment discrimination).

[8] *See Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (finding that Title VII and § 1981 claims use the same analytical framework); *Cross*, 49 F.3d at 1508 (11th Cir. 1995) (finding that elements of Title VII and § 1983 claim are the same); *Cofield v. Goldkist*, 267 F.3d 1264, 1267 n.6 (11th Cir. 2001) (noting that the *McDonnell Douglas* framework applies to ADEA cases); *Bonham v. Regions Mortgage, Inc.*, 129 F. Supp. 2d 1315, 1321 (M.D. Ala. 2001) (holding that the same allocation of proof applies to claims brought under ADEA and AADEA).

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Under the *McDonnell Douglas* and *Burdine* framework, a plaintiff must establish a prima facie case by a preponderance of the evidence, which would then create a presumption of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254. To rebut the presumption, the defendant must then "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If the defendant satisfies this burden of production, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). Summary judgment will be granted in favor of the defendant if the plaintiff fails to produce evidence that is sufficient for a reasonable fact finder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual. *Id.* at 1024-25.

**C.    *Failure to Hire***

    1. <u>Discrimination Based on Race</u>

In a failure-to-hire case, the plaintiff must establish a *prima facie* case by demonstrating that: "(1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class." *Joe's Stone Crabs*, 296 F.3d at 1273. Matthews is a member of a protected class who applied for a

position for which the City was accepting applications.  McCoy, a person outside the protected class, was hired instead of Matthews.  The City argues that Matthews was not qualified and therefore has not established a *prima facie* case; however, Rubin stated in his deposition that the personnel department screened all applicants for the City Clerk-Treasurer position and only referred those who were qualified for interviews.  (Rubin Dep. 58.)  In addition, after the City awarded the position to McCoy, Rubin sent Matthews a letter stating that "[a]ll five of the candidates were very qualified." (Pl.'s Ex. 14.)  The Court finds, therefore, that Matthews was qualified for the position.  Matthews has met her burden of establishing a *prima facie* case of race discrimination in hiring.

The *prima facie* case creates a presumption of discrimination.  However, this presumption is rebuttable if the City carries its burden of production to articulate a legitimate, non-discriminatory reason for failing to hire Matthews.  *See McDonnell Douglas*, 411 U.S. at 802.  The employer's burden is "exceedingly light," requiring only that the employer offer evidence that could lead a rational fact-finder to believe the decision was not discriminatory.  *Turnes v. AmSouth Bank, N.A*, 36 F.3d 1057, 1061 (11th Cir. 1994).  At this stage, the employer has only the burden of production, not of persuasion.  *See, e.g., Burdine*, 450 U.S. at 253-55, 258; *McDonnell Douglas*, 411 U.S. at 802. It is not necessary that the court believe the evidence; the court's analysis "can involve no credibility assessment." *St. Mary's Honor Ctr.*, 509 U.S. at 506.  If the employer is able to satisfy this burden, "'the *McDonnell Douglas* framework – with its presumptions and burdens' – disappear[s] and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142-43 (2000) (citing *St. Mary's Honor Ctr.*, 509 U.S. at 113, and *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)).

The City proffered a reason, supported by Rubin's deposition testimony and declaration, for

not hiring Matthews:

> [Rubin] believed that McCoy was best qualified for the job based on her credentials,
> qualifications, her extensive experience in municipal government with the City of
> Dothan, including her accounting and financial background.  Plaintiff, on the other
> hand, had none of the educational background sought, had none of the municipal
> experience sought, did not have knowledge of the principles of municipal budgeting
> and responded poorly to questions regarding the Pension and Retirement System.

(Defs.'Br. 28.)  The Court finds that the City has carried its burden of production to articulate a

legitimate, non-discriminatory reason for failing to hire Matthews.  This proffered reason is

sufficient to rebut the inference of discrimination.

The burden now shifts back to Matthews to demonstrate that the defendant's reason is

merely pretextual.  *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) (citation

omitted) ("[T]o avoid summary judgment [the plaintiff] must introduce significantly probative

evidence showing that the asserted reason is merely a pretext for discrimination.").  She may carry

this burden by pointing out "weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action." *Cooper v. Southern Co.*,

390 F.3d 695, 725 (11th Cir. 2004) (citation omitted).  The Supreme Court has held that a "plaintiff's

prima facie case, combined with sufficient evidence to find that the employer's asserted justification

is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*,

530 U.S. at 148.

Matthews first asserts that the City's proffered reason is pretextual because she alleges that

the City has ignored the Consent Decree that the City has been under since 1976. (Pl. Br. 4-5.)

11

Matthews's assertion is not supported by any admissible evidence to support a finding of a violation of the Consent Decree.[9]  Matthews's unsupported assertion does not show pretext.

Matthews next argues that the City's proffered reason is pretextual because "[t]he alleged criteria used by Rubin to evaluate Matthews is materially inconsistent with the criteria set forth in the published advertisement for the City Clerk-Treasurer position."  (Pl. Br. 34.)  She asserts that "only two of the eleven requirements listed on the official job description for City Clerk-Treasurer" require financial knowledge.  (Pl. Br. 35.)  Presumably, Matthews refers to the "Required Knowledge, Skills and Abilities" section of the job description:

> Considerable knowledge of the preparation of ordinances and resolutions.
> Considerable knowledge of the City of Dothan's Pension and Retirement system.
> Knowledge of the principles of municipal budgeting.
> Considerable knowledge of state and local laws that apply to ordinances, resolutions, and elections.
> Ability to interpret laws that relate to municipal government.
> Ability to provide effective advisory assistance to City department.
> Ability to develop and install administrative procedures and operations and to evaluate their efficiency and effectiveness.
> Ability to exercise judgment and discretion in developing, applying, and interpreting city policies and procedures.  Ability to speak and write effectively.
> Ability to establish and maintain effective working relationships with other officials and the general public.
> Ability to maintain appropriate records, interpret and disseminate information to interested individuals and agencies.
> Ability to operate a motor vehicle.

(Pl. Ex. 2B.)  As stated previously, the job description also identified three "qualifications":  a bachelor's degree in public or business administration with a minor in accounting, extensive experience in the field of municipal administration, and certified municipal clerk status or ability to

---

[9]  Rule 56(e) of the Federal Rules of Civil Procedure unambiguously states that all affidavits opposing summary judgment "shall be made on personal knowledge [and] set forth facts as would be admissible in evidence . . . ."  Matthews's allegations with respect to the consent decree are either hearsay or not based on personal knowledge and, as such, are not admissible in evidence.

obtain such certification.  (*Id*.)  The description further listed dozens of "examples of work performed."  (*Id*.)

In his deposition Rubin was asked about the requirements for the position of City Clerk-Treasurer.  For the sake of clarity and because it may have been mischaracterized in the briefing, the court quotes Rubin's deposition testimony[10] at length:

> **Q       Did you consider familiarity with budgets payroll, accounting, things of that nature to be a big part of the City Clerk Treasurer's job?**
>
> A       In that the City Clerk Treasurer has fiduciary responsibilities, yes, sir.
>
> **Q       Approximately what, if you could weight it, what weight would you give those things I just said?**
>
> A       I didn't weight it, but the responsibility of financial soundness is really immense for the City Clerk.  It's significant.
>
> **Q       Take a look at [the job description], sir, and let me know what portions of [the job description] you consider to be relevant as far as budgeting, payroll, and accounting?**
>
> A       All of it, sir.
>
>                 (Whereupon, discussion ensured off the record.)
>
> BY MR. COOKS:
>
> **Q       You say all of [the job description] relates to budget, payroll, accounting skills and knowledge, correct, sir?**
>
> A       I would describe it as either directly or indirectly every aspect from accounting to collecting funds and so forth, but yes, sir.
>
> **Q       How does preparing ordinances, resolutions, deeds, agreements, contracts, proclamations, and other legal documents to be presented to the City Commission for adoption relate to budget, payroll, and accounting skills?**
>
> A       A budget is submitted as a resolution.  There are ordinances that have financial impact.  It's inseparable, sir.  I can probably give you a city government 101, but there is no separation between the two.
>
> **Q       How does researching state and local laws to ensure the legality of documents and procedures to be involved in adopting certain documents to the Commission, how does that relate to budgets, payroll, and accounting?**
>
> A       There is a particular state law that has accountability requirements for municipalities, so we have to know what that law is so we can comply with it.  I don't know the percentage of state laws that involve financial issues, but again, it's huge.

---

[10]  The typographical, spelling, and grammatical errors contained in the transcript remain in the quoted material without correction.

**Q      You say that the only state and local laws that the City Clerk Treasurer would be researching would deal with financial stuff?**

MS. NELSON: Objection.

A      (Continuing) No, sir.

**Q      I'm asking?**

A      All laws.

**Q      All laws, correct?**

MS. NELSON: Objection, form.

A      All laws.

**Q      Is there a financial or accounting component to compiling items for City Commission meetings to your knowledge?**

A      Yes, sir.  Huge.

**Q      What is that?**

A      Most every item deals with the expenditure or receiving of funds.

**Q      Most every item?**

A      I would say the vast majority by far, yes, sir.

**Q      Would that be the same answer for supervising, recording, and transcribing the minutes?  Does that have a financial component, too?**

A      Yes, sir.

**Q      What is that?**

A      Again, the city government, one of its main functions is the receiving and distribution of money, to maintain proper and clear, and in this case, separate records.

It's a checks and balance system so that the Financial Office maintains integrity.  The City Clerk serves as the Treasure to back it up.  So it's critical financial, critical function.

**Q      Recording and transcribing the minutes has a financial component?**

A      It does, sir.  It does.

**Q      Okay.   What's the financial component for ensuring all ordinances, resolutions, deeds, contracts, and agreements are recorded and indexed?**

A      I guess if they weren't recorded people could be receiving double bills or the city could demand double payments.  So keeping clear and accurate records has a financial implication, yes, sir, it does.

**Q      Processing claims for the city?  That has a financial component too?**

A      One hundred percent financial.

**Q      What is that?**

A      Claims are asking people to give – the city to give them money for injuries and other related problems, So the only reason why there are claims is because of a financial situation.

14

**Q      And conducting elections, that has a financial component, doesn't it?**

A      It does have implications because when you run an election, and I appreciate it may not sound that way, but it costs a lot of money to conduct an election, to validate the results, to bring in voting machines.  Yes, sir.  There is a huge responsibility with an election.

**Q      And the responsibility would be paying to – I mean, can you explain?**

A      Sorry. To conduct an announcement there has to be an announcement, and believe it or not, when the city government puts items in the newspapers we have to pay.

There has to be a rental of the voting machines.  We have to pay the folks that conduct the elections.  There are also volunteers that receive a stipend pay. We have to pay for them for their gasoline and milage, we have to tally the votes and results.

There is a huge financial component to run an election.  Without looking at notes, I want to say a typical City of Dothan election costs about $55,000, I think.

**Q      So I guess to sum it up, what you just described to me is City Clerk Treasurer would be responsible for writing checks and making sure people are paid?**

A      She writes and countersigns every single check.

**Q      So the financial component would be basically paying bills for the city?**

A      No.  That's the broadest spectrum possible, and I thought I was clear in that.

**Q      Tell me some of the things in that broad spectrum besides writing checks?**

A      Can we go back though the list again?

MS. NELSON: He's asking you to.  I thought the question was tell me the financial components of the job of City Clerk Treasurer of the city?

MR.COOKS: Yes, but I'm tying to figure out –

A      (Continuing) Write checks, receive funds.  The City Clerk has to send out assessments, has got to validate bonds.  The City Clerk is the responsible party for the retirement system.

The City Clerk has to make sure that the audits are done in a timely fashion and correct.  There is probably not an element of the City Clerk's job that either directly or indirectly doesn't involve financial aspects.

**Q      Why doesn't the job description say finance.  You keep saying finance, finance, finance but the job description doesn't say that to my reading?**

MS. NELSON: Object to the form.

A      (Continuing) I think that's your interpretation, counselor.

**Q      That's fair.  All right.**

15

(Rubin Dep. 82-88.)

It is clear from this exchange, particularly the last question, that the gist of Matthews's argument is that because the job description did not include the word "financial" more often, then the City's proffered reason for basing its hiring decision in part on the financial background of its candidates is simply an inconsistent *post hoc* justification and, thus, must be pretextual.[11] Matthews's argument fails for two reasons.  First, Rubin explained how many of the "required knowledge, skills and abilities" and "examples of work performed" relate to a financial background. He did not make baseless, conclusory, or inconsistent justifications. Other than her incredulity that a City Clerk *Treasurer* might need financial skills and her opinion that other city officials can perform the City's financial functions, (*see* Pl. Br. 35), Matthews has not submitted any evidence that tends to prove that the job does not have a significant financial component.  She claims, and Rubin confirms, that Rubin intended to use a skills assessment during the hiring process.   Rubin testified that the assessment was "compromised" when it was released by the Personnel Director prior to the scheduled interviews, and, therefore, he did not use the assessment or any of the questions.  Because the assessment did not include any questions relating to finance or accounting, Matthews reasons, the candidates' financial background became an important criterion only after the litigation ensued.  This argument fails where it is undisputed that the assessment was only one tool

_____

[11]  The cases cited by Matthews for the proposition that "*post hoc* explanations" are probative of pretext, *see Dennis v. Colleton Med. Ctr., Inc.*, 290 F.3d 639, 647 (4th Cir. 2002); *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001), are not binding on this court as they were issued by the Fourth Circuit Court of Appeals.  The court notes that any explanation given *after* a decision has been made could arguably be deemed "*post hoc*."  Thus, the court will follow this Circuit's precedent in evaluating pretext.  *See, e.g.,Bechtel Constr.Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir. 1995) (finding that pretext may be demonstrated through "shifting explanations"); *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998) ("[T]he identification of inconsistencies in an employer's testimony can be evidence of pretext.")

Rubin intended to utilize in his evaluation of the candidates.  Moreover, it is undisputed that the actual interview questions related at least in part to financial or accounting matters.

Second, the proffered legitimate, non-discriminatory reason relates not only to the financial skills of the candidates, but also to their experience in municipal government.  The job description listed the actual "qualifications" as a bachelor's degree in public or business administration with a minor in accounting, extensive experience in the field of municipal administration, and certified municipal clerk status or ability to obtain such certification.  (Pl. Ex. 2B.)  Because these qualifications, skills, and examples are a dead on match with the criteria Rubin used to evaluate the candidates, the court finds that there is no inconsistency.

In her attempt to demonstrate pretext, Matthews further argues that her qualifications are clearly superior to McCoy's.  (Pl. Br. 36.)  She warns the court that "summary judgment cannot legitimately be granted" because evidence of each  candidate's qualifications is "hotly contested" and involves  "prohibited credibility choices."  The court rejects out of hand this dire warning for the simple fact that the candidates' *qualifications* are not in dispute and do not involve either a factual or credibility determination.  The court credits Matthews's legal education and extensive legal experience just as it credits McCoy's accounting background and extensive municipal experience.  What is in dispute, however, is the legal issue of whether Matthews's qualifications evidence is sufficient to establish pretext.  The court finds that it is not.

"[Q]ualifications evidence may suffice, at least in some circumstances, to show pretext." *Ash v. Tyson Foods, Inc.*, 126 S.Ct. 1195, 1197 (2006) (citations omitted).  The Supreme Court in *Ash* declined "to define more precisely what standard should govern pretext claims based on superior qualifications," but cited another Eleventh Circuit standard with approval.  *Id.* at 1198 (citing

17

*Cooper*, 390 F.3d at 732).  On remand, the Eleventh Circuit confirmed the courts should use "the *Cooper* standard to evaluate the level of disparity necessary to constitute proof of pretext claimed on the basis of comparative qualifications."  *Ash v. Tyson Foods, Inc.*, No. 04-11695, 2006 WL 2219749 (11th Cir. Aug. 2, 2006).  Therefore, the court will utilize the *Cooper* standard here: "[D]isparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *Cooper*, 390 F.3d at 732.

Matthews relies on her own opinion that she was better qualified, but the *McDonnell Douglas* analysis is not concerned with Matthews's opinion that her qualifications were superior or even whether the court could conclude that she was better qualified than McCoy.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1090 (11th Cir. 2004).  Pretext cannot be established "merely by questioning the wisdom of the employer's reason."  *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001); *see also Rowell v. BellSouth Corp.*, 433 F.3d 794, 798-99 (11th Cir. 2005) (explaining that "[i]t is by now axiomatic that we cannot second-guess the business decisions of an employer").  It is undisputed that McCoy had a background in accounting and extensive experience in municipal administration.  It is further undisputed that Matthews had limited experience in both accounting and municipal administration.  On this record, Matthews does not meet her burden under *Cooper* to show that the disparities between her qualifications and McCoy's qualification were so severe that no reasonable person could have chosen McCoy over her.

Matthews further argues that the City's proffered reason is pretextual because she alleges that "Reverend Green stated that Matthews was more qualified."  The record evidence shows that

Matthews's allegation about Reverend Green's statements is not based on admissible evidence.[12] For this reason alone, Matthews's argument fails to establish pretext.

Matthews's final argument to establish pretext is the EEOC's cause determination. The EEOC determination is not binding on the court. *See Dickerson v. Metro. Dade County*, 659 F.2d 574, 579 n.27 (5th Cir. 1981) ("[I]n Title VII litigation, the district court reviews the evidence de novo, independent of any determination by the EEOC."); *Smith v. Universal Servs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1972)[13] ("It is thus clear that the report is in no sense binding on the district court and is to be given no more weight than any other testimony at trial."); *Williams v. Ala. Indus. Dev't Tr'g.*, 146 F. Supp. 2d 1214, 1224 (M.D. Ala. 2001) ("But there should be no confusion that [the EEOC] cannot usurp the judiciary's role in determining whether there is a genuine issue of material fact.").

The EEOC found there was reasonable cause to believe that the City discriminated against Matthews because of her race in failing to hire her for the City Clerk-Treasurer position. (Pl. Ex. 2E.) In just one paragraph, the EEOC investigator concluded that "[e]vidence shows that the Charging Party had more experience than McCoy with respect to most of the job duties involved, including preparing and maintaining legal documents, supervising staff, researching laws and regulations, and advising officials." (*Id.*) It is not clear from the reasonable cause letter what evidence the EEOC investigator reviewed in reaching her determination; however, the brevity of the

---

[12] This statement is hearsay and is not properly before the Court. Rule 56(e) of the Federal Rules of Civil Procedure unambiguously states that all affidavits opposing summary judgment "shall set forth facts as would be admissible in evidence . . . ." Admissible evidence generally does not include hearsay. Fed.R.Evid. 801(c).

[13] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit haded down prior to the close of business on September 30, 1981).

determination and lack of citation to the evidence suggests that the EEOC was not fully informed and certainly did not have the benefit of fully developed facts through an adversarial discovery process.  Furthermore, the standard utilized by the EEOC for determining whether discrimination occurred is not permissible under the law.  For these reasons, the court finds that the cause determination is unreliable and inadmissible.  Therefore, the cause determination is not probative evidence showing that the City's proffered reason is pretextual, and it does not create a genuine issue of material fact.

After careful consideration of all of the evidence and the arguments presented by the parties, the court cannot conclude that Matthews has submitted sufficient evidence that the City's proffered legitimate, non-discriminatory reason is false, and, thus, Matthews fails to carry her burden of establishing pretext.  Accordingly, the City's motion for summary judgment as to Matthews's failure-to-hire claim based on race pursuant to Title VII, § 1981, and § 1983 is due to be granted.[14]

To the extent that Matthews brings a failure-to-hire claim based on race against Tew, his motion for summary judgment on this claim was granted.  Tew is not an employee of the City and had nothing to do with the hiring process for the position of City Clerk-Treasurer.

2. Discrimination Based on Age

To establish a *prima facie* case of age discrimination, Matthews must show that (1) she is a member of the protected age group; (2) she was subjected to adverse employment action; (3) she was qualified for the job; and (4) a substantially younger person was selected to fill the position.  *See Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998).  The Supreme Court has held that "[b]ecause the ADEA

---

[14] Because the § 1983 claim fails, the court need not address the defendants' qualified immunity defense.

prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

Matthews cannot demonstrate that McCoy was a "substantially younger person." Matthews was 49 years old at the time she applied for the City Clerk-Treasurer position; McCoy was 43. Without more, this six year age difference is not sufficient to create an inference of age discrimination in this hiring decision. *See O'Connor*, 517 U.S. at 312 ("The prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion."). This case is distinguishable from those cases in which an even smaller age difference was deemed sufficient to meet the "substantially younger" element of the ADEA *prima facie* case. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999) (holding that 42-year-old plaintiff, who was replaced by a 37-year-old, met the "substantially younger" element of the *prima facie* ADEA case); *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1003 (11th Cir. 1997) (holding 39-year-old was "substantially younger" than 42-year-old). In both *Damon* and *Carter*, the plaintiffs had held their positions for many years and performed them well before being replaced by younger employees. Furthermore, the plaintiffs in those cases presented quite a bit of evidence of discriminatory animus beyond a mere age difference. Such evidence of discriminatory animus is wholly absent in this case. Therefore, Matthews fails to establish a *prima facie* case of age discrimination. Accordingly, the defendants' motions for summary judgment with respect to the ADEA and AADEA claims are due to be granted.

**D.     Retaliation**

Matthews alleges retaliation under Title VII.[15]  Title VII's anti-retaliation provision protects participation conduct, which covers all persons who have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII, and opposition conduct, which makes it illegal to discriminate against an employee because he or she has opposed illegal discrimination.  *See* 42 U.S.C. § 2000e-3(a).  "As with a discriminatory treatment claim, a plaintiff alleging a retaliation claim under Title VII must begin by establishing a prima facie case." *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).  A plaintiff may prove a *prima facie* case of retaliation by showing that "(1) [s]he engaged in statutorily protected activity, (2) [s]he suffered an adverse employment action, and (3) there is some causal relation between the two events." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (citations omitted).

1. Oppositional Conduct

The court finds that Matthews fails to establish a *prima facie* case of retaliation.  "[T]he protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those . . . who informally voice complaints to their superiors or who use their employers' internal grievance procedures." *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989).  An employee is protected from retaliation "regardless of her complaints so long as she can show a good faith, reasonable belief that the challenged practices violate Title VII." *Id*.  The Eleventh Circuit has emphasized that "a plaintiff's burden under this

---

[15] "A § 1983 claim cannot be predicated on allegations of retaliation; Title VII . . . provides the exclusive remedy for such claims." *Gamper v. State of Ala. Dept. of Corr.*, 968 F.Supp. 1483, 1485 n.1 (M.D. Ala. 1997). Therefore, to the extent they are based on her claim of retaliation, Matthews's § 1983 claims fail as a matter of law.

standard has both a subjective and an objective component. A plaintiff must not only show that [s]he *subjectively* (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was *objectively* reasonable in light of the facts and record presented." *Little v. United Techs.*, 103 F.3d 956, 960 (11th Cir. 1997).

Matthews attempts to create a prima facie case of retaliation by alleging that, through her role as chair of the personnel board, she engaged in protected activity under the opposition clause[16] of Title VII when she allowed and conducted a hearing on behalf of a city employee who had made a claim of race discrimination. Matthews's conduct, however, does not equate to statutorily protected activity.[17] When she conducted the grievance hearing, Matthews was merely carrying out her duties as chair of the Personnel Board. She had not *opposed* anything--no protests and no complaints, formal or otherwise, on behalf of others, nor, at this time, had Matthews lodged her own complaint against the City. To support her argument that she engaged in oppositional conduct, Matthews claims that she convened the hearing "over the objections of white members of the Dothan city leadership." (Pl. Br. 40.) This bare assertion is not supported by the record evidence. The statement allegedly made by Personnel Director Kai Davis--that she did not believe Matthews could be fair and impartial--does not tend to establish either that the City objected to the grievance hearing being held

---

[16] Without doubt, Matthews's conduct is not protected activity under the participation clause. See *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) ("This clause protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house [hearing], conducted apart from a formal charge with the EEOC.").

[17] None of the six cases to which Matthews cites supports the proposition that conducting an internal grievance hearing as part of one's employment duties is oppositional conduct.

or that the City was engaged in unlawful discrimination.[18]  The Wade Morrison averment, to which Matthews cites, is irrelevant as it relates to matters other than the grievance at issue.  (*See* Pl. Ex. 6.)

Even if conducting a grievance hearing as part of one's employment duties were oppositional conduct, Matthews cannot (and, indeed, has not even tried to) establish a causal connection between such conduct and the City's failure to hire her for the City Clerk-Treasurer position.  There are two bases for this conclusion.  First, Matthews has not offered even circumstantial proof that all of the decision-makers had actual knowledge of her alleged prior protected conduct.  *See Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) (holding that "a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action").  Second, even if the decision-makers had actual knowledge of Matthews's alleged protected conduct, the relatively short span of time between the hearing and the decision to not hire Matthews does not create a reasonable inference of causation in light of the fact that she was selected as a finalist for the City Clerk-Treasurer position and interviewed for the job *after* she presided over the grievance hearing.  This rather favorable employment action severs any causal connection that could have existed between the alleged protected conduct and the failure to hire based on temporal proximity.

Therefore, the court finds that Matthews fails to establish a *prima facie* case of retaliation.  Accordingly, the City's motion for summary judgment with respect to retaliation in response to oppositional conduct is due to be granted.

_____

[18]  Moreover, although the Kai Davis statement is included in Matthews's brief, she omitted a citation to the evidence.  (*See* Scheduling Order, Doc. # 46 § 2.)

2. Participatory Conduct

Matthews also argues that, after she filed the EEOC claim underlying this lawsuit, Tew retaliated against her "by 'bird-dogging' her at Board meetings that she chaired, micro-managing meetings called by her, actively soliciting another African-American female to replace her on the Board, and persuading the [CSC] not to reappoint her to another term as it had done with white attorneys who sat on the Board in the past."  (Pl. Br. 41-42.)[19]  Although by filing an EEOC claim Matthews engaged in participatory conduct protected under Title VII, she cannot establish the adverse employment action element of a *prima facie* case.  Matthews's allegations in her brief are not supported by the record evidence.  She admits in her deposition that she was originally appointed to a term of a definite time period as chair of the Personnel Board. (Pl. Ex. 1 281-85.)  When her term expired, another person was appointed to be chair by a majority vote of the CSC.  (*Id.*)  While Matthews seems to be alleging that the failure of the CSC to re-appoint her is an adverse employment action, she has not established that she was promised or entitled to another term of service.  Furthermore, she admits that Tew did not have the authority to remove her from the Personnel Board.  (*Id.* 281.)  Tew was appointed to the CSC by the Kiwanis Club of Houston County and is not an employee of the City.  His actions cannot be imputed to the City, and he cannot be individually liable under Title VII.  Accordingly, Tew's motion for summary judgment with respect to the retaliation in response to participatory conduct has been granted.

---

[19]  In the Amended Complaint, the only adverse employment action that Matthews alleged was the City's failure to hire her for the City Clerk-Treasurer position.  The argument in her brief seems to include additional adverse employment action of harassment or termination from the Personnel Board as an improper amendment to her pleading.  Moreover, it is not clear that this alleged retaliatory conduct by Tew was included in her 2003 EEOC claim.  For these reasons, and because the claim is without merit, the retaliation claim against Tew was due to be dismissed.

25

## V.  CONCLUSION

For the reasons set forth above, the court granted Tew's summary judgment motion and dismissed all claims against him.  It is hereby ORDERED that the City Defendants' Motion for Summary Judgment (Doc. # 60) is GRANTED and all claims against the remaining defendants are DISMISSED.  It is further ORDERED that the City Defendants' Motion to Strike (Doc. # 75) is DENIED as MOOT.  All remaining dates and deadlines are cancelled.

An appropriate judgment will be entered.

DONE this 18th day of December, 2006.


　　　　　　　　　　/s/   W.  Keith Watkins
　　　　　　　　　　UNITED STATES DISTRICT JUDGE